UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HERITAGE HOME FOR FUNERALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HERITAGE CREMATION PROVIDER, LLC, <br><br> Defendant. | 4:17-CV-04086-KES <br><br><br> ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT |

Plaintiff, Heritage Home for Funerals, Inc., brought this action against defendant, Heritage Cremation Provider, LLC. Docket 1. After the Clerk's entry of default (Docket 14), plaintiff moved for default judgment. Docket 15. The court granted the motion and entered a default judgment in favor of plaintiff. Docket 17. Now plaintiff moves for an order of contempt and to enforce the default judgment. Docket 20. Defendant opposes plaintiff's motion and moves to set aside the default judgment. Dockets 36, 39. For the reasons stated below, the court denies defendant's motion to set aside the default judgment.

**BACKGROUND**

On June 30, 2017, plaintiff, Heritage Home for Funerals, Inc., a South Dakota corporation, brought this action against defendant, Heritage Cremation Provider, LLC, a Colorado limited liability company, alleging trademark infringement, trademark dilution, false designation of origin, and unfair

competition. Docket 1. After plaintiff was unable to personally serve defendant with the summons and complaint, plaintiff moved for service by publication. Dockets 8, 9. The court granted the motion. Docket 10. Plaintiff filed an affidavit of publication that stated the notice was published four times in *The Colorado Springs Gazette*. Docket 11. Defendant did not file an answer or defend itself. Plaintiff moved for entry of default. Docket 12. The Clerk of Courts entered default on September 11, 2017. Docket 14. On September 15, 2017, plaintiff moved for default judgment. Docket 15. The court entered default judgment in favor of plaintiff on February 20, 2018. Docket 17.

On October 25, 2018, plaintiff filed a motion for an order of contempt and to enforce the default judgment. Docket 20. The court scheduled a hearing for March 4, 2019, and ordered defendant to show cause. Docket 24. At the show cause hearing, plaintiff was represented by counsel. Docket 29. Anthony J. Damiano was present and stated he was there on behalf of defendant. *Id.* The court informed Anthony that he could not represent defendant because he was not an attorney. *Id.* Anthony requested a continuance of the hearing, which plaintiff opposed. *Id.* The court ordered defendant to have an attorney make a notice of appearance within one week of the hearing. *Id.*

On March 6, 2018, an attorney filed a notice of appearance for defendant. Docket 30. The court granted defendant's motion to continue the show cause hearing and set it for April 11, 2019. Docket 35. On March 18, 2019, defendant filed an opposition brief to plaintiff's motion for an order of contempt and to enforce the default judgment. Docket 36. Additionally,

defendant filed a motion to set aside the default judgment. Docket 39. Plaintiff opposes defendant's motion. Docket 46. The court held the show cause hearing on April 12, 2019. Docket 48.

## DISCUSSION

Federal Rule of Civil Procedure 55(c) allows a court to set aside a final default judgment under Rule 60(b). Rule 60(b) provides six grounds for relief from a final judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial . . . ;
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Defendant argues that the default judgment should be set aside based on subsections 1, 4, and 6 of Rule 60(b).

## I. Rule 60(b)(4)

Defendant argues that the default judgment must be set aside under Rule 60(b)(4) because the judgment is void. Docket 40 at 6. Defendant contends that the judgment is void because defendant was never served with a summons and complaint. *Id.* Defendant alleges that service failed because it was never personally served and plaintiff's service by publication was inadequate to put defendant on notice. *Id.* at 6, 7.

Federal Rule of Civil Procedure 60(b)(4) requires a court to set aside a default judgment if the judgment is void. "A judgment is void if the rendering court lacked jurisdiction or acted in a manner inconsistent with due process." *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008). Though some relief under Rule 60(b) is discretionary, "relief from a judgment that is void under Rule 60(b)(4) is not discretionary." *United States v. Three Hundred Fifty-Three Thousand Six Hundred Dollars, in United States Currency*, 463 F.3d 812, 813 (8th Cir. 2006).

## A. Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(h) prescribes the way defendant may be served because defendant is a limited liability company organized under Colorado law. Docket 9 ¶ 3; Docket 9-1. An unincorporated association may be served by delivering a copy of the summons and the complaint to an officer, managing or general agent, or an agent authorized by law or appointment to receive service of process. Fed. R. Civ. P. 4(h)(1)(B).

Here, plaintiff attempted to serve defendant using this method, however, plaintiff was unable to personally serve defendant. Docket 9 ¶ 2. Plaintiff's counsel was able to find defendant's principal office and registered agent's information on the Colorado Secretary of State's website. Docket 9-1; Docket 9 ¶ 4. The address listed for both the principal office and the registered agent,

Joseph Damiano, was 1755 Telstar Drive, Colorado Springs, Colorado, 80920. Docket 9-1. Plaintiff attempted to serve defendant through its registered agent at the sole address defendant designated for receiving service on its behalf, but the process server was unable to locate and serve defendant. Docket 9 ¶ 5; Docket 9-2. The process server stated that the address provided was a "Regus virtual office and mailing address only." Docket 9-2. Thus, plaintiff was unable to personally serve defendant because the designated address did not accept service of process. Docket 9 ¶ 5.

Alternatively, the Federal Rules of Civil Procedure allow for an unincorporated association to be served in a manner prescribed by Rule 4(e)(1). Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) states, "[A]n individual . . . may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Thus, Rule 4(e)(1) allowed plaintiff to serve defendant under South Dakota law.

In South Dakota, when a party to whom service of the summons is to be made cannot be found within the state after due diligence, the court may grant an order that service can be made by publication of the summons. SDCL § 15-9-7. For a party to establish due diligence, "it must be shown that all reasonable means have been exhausted in an effort to locate interested parties." *Ryken v. South Dakota*, 305 N.W.2d 393, 395 (S.D. 1981) (citing *Davis v. Kressly*, 107 N.W.2d 5 (S.D. 1961)). "A diligent search is measured not by the quantity of the search but the quality of the search." *In re D.F.*, 727 N.W.2d

5

481, 484 (S.D. 2007) (internal quotation omitted). The court granted plaintiff's motion to serve defendant by publication. Docket 10. At that time, the court found that plaintiff had satisfied the due diligence requirement based on the affidavit submitted by plaintiff's counsel. Docket 9.

Defendant contends plaintiff did not exhaust all reasonable means. Docket 40 at 9. Plaintiff attempted to personally serve defendant through its registered agent at the address designated by defendant for service of process, but to no avail. Docket 9-2. The designated address was a "virtual office," which equates to a PO box. *Id.* Multiple attempts of personal service were unnecessary because there would never be a situation where plaintiff could personally serve defendant there; it was not a legitimate office where the registered agent would be present to be served. Thus, plaintiff only had one means of service — publication. It should be noted that Anthony received some type of notification that plaintiff had initiated an action against defendant. Defendant acknowledges that Anthony contacted plaintiff after the single time personal service was attempted. Docket 48; Docket 43-1.

Defendant argues that "[a]side from attempting personal service, plaintiff highlighted no other effort made to determine Joseph's whereabouts." Docket 40 at 8. Defendant argues plaintiff should have learned that Joseph Damiano died, and then should have looked in North Carolina to find his estate's probate proceeding. Docket 48. But nothing in the record would have notified plaintiff that Joseph was deceased or that he had resided in North Carolina. *See* Docket 41-1. At the show cause hearing, defendant acknowledged that nothing in

defendant's registration with the Colorado Secretary of State's office would have put plaintiff on notice to look for any information in North Carolina. Docket 48. Furthermore, Joseph's residence in North Carolina likely violated the requirements to be a registered agent in Colorado. *See* Colo. Rev. Stat. Ann. § 7-90-701(1)(a) (requiring a registered agent be an "individual . . . whose primary residence . . . is in this state."). Also, as noted by plaintiff, defendant did not provide contact information for its officers, managing agents, or general agents, if any existed, to the Colorado Secretary of State's office. Docket 46 at 7; Docket 9-1; Docket 41-1.

Plaintiff satisfied due diligence because it used all the information available to it to attempt personal service. Because defendant's "office" did not accept service of process, plaintiff had no other reasonable means by which to serve defendant. Docket 9 ¶ 6. Therefore, the court finds that plaintiff properly served defendant by publication.

### B. Due Process

Defendant also argues that plaintiff's service by publication did not adequately notify defendant about the action. Docket 40 at 9. Defendant contends that the publication was insufficient because it was published in a local newspaper and directed at the "deceased defendant." *Id.* Additionally, defendant argues that due process required plaintiff to use Colorado law to serve defendant. Docket 48. Defendant bases its due process argument on the fact that Anthony, who resides in North Carolina and/or Florida, did not see

the notice in the Colorado newspaper and had no reason to inspect the Colorado newspaper for plaintiff's notification. *Id.*; Docket 40 at 10.

" 'At the outset, it is to be noted that the use of constructive [service] for in personam actions is not a per se violation of due process under the Fourteenth Amendment.' " *In re D.F.*, 727 N.W.2d at 484 (alteration in original) (quoting *United Nat'l Bank v. Searles*, 331 N.W.2d 288, 291 (S.D. 1983). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The South Dakota Supreme Court has upheld the constitutionality of service by publication upon parties who are out of state and cannot be found. *See, e.g.*, *In re D.F.*, 727 N.W.2d at 484; *People in Interest of E.D.J.*, 499 N.W.2d 130, 132 (S.D. 1993); *In re J.W.W.*, 334 N.W.2d 513, 516 (S.D. 1983).

Here, plaintiff put its notice in *The Colorado Spring Gazette*, the leading newspaper in the city defendant listed as its location with the Colorado Secretary of State. Docket 11. The notice was published four times: July 25, 2017, and August 1, 8, 15, 2017. *Id.* at 3. Additionally, contrary to defendant's argument that the notice was directed at Joseph Damiano, the notice was properly directed at "Defendant Heritage Cremation Provider, LLC." *Id.* This publication would also be reasonably calculated to reach the interested party, the corporate defendant or the registered agent—whose residences were listed

in Colorado Springs—one of the four times it was published in *The Colorado Spring Gazette.*

Defendant argues that even if service was effective, defendant is a defunct business that no longer conducts business. Docket 50 at 5. The fact that defendant is a delinquent entity does not implicate service of process. Defendant continued to exist notwithstanding its delinquency. Colo. Rev. Stat. Ann. § 7-90-903(4). Also, plaintiff correctly notes that defendant's argument "overlooks the fact that it is defendant's obligation to 'continuously maintain in [Colorado] a registered agent' authorized to accept service on its behalf." Docket 46 at 5-6 (quoting Colo. Rev. Stat. Ann. § 7-90-701(1)). In Colorado, the registered agent's authority is not terminated even if defendant is in a delinquent status. Colo. Rev. Stat. Ann. § 7-90-903(3). As the executor of his father's estate, Anthony had the ability to remove and replace his father as defendant's registered agent. Colo. Rev. Stat. Ann. § 7-90-702(4). Yet he has not filed such a form with the Colorado Secretary of State's office. Docket 42 ¶¶ 10-11; Docket 48; Docket 41-1. Though defendant has been in a delinquent status since October of 2017, Joseph Damiano remained as its registered agent. Docket 48; Docket 41-1.

The court finds that due process allowed plaintiff to serve defendant by publication because after due diligence, plaintiff could not find defendant's registered agent to personally serve defendant. Also, plaintiff's service by publication adequately notified defendant because it was published in the city of defendant's registered address. Because defendant was served by

9

publication, the court finds that it has personal jurisdiction over defendant. The judgment is valid. The court denies defendant's request for relief under Rule 60(b)(4).

## II.    Rule 60(b)(1)

Defendant argues that even if the court were to hold that the judgment is valid, the court should still set aside the default judgment under Rule 60(b)(1). Docket 40 at 11. Under Rule 60(b)(1), a court can set aside a default judgment if there is mistake, inadvertence, surprise, or excusable neglect. But a motion under Rule 60(b)(1) must be filed no more than a year after the entry of the judgment. Fed. R. Civ. P. 60(c)(1).

Here, defendant's Rule 60(b)(1) motion is untimely. The court entered the default judgment on February 20, 2018. Docket 17. The deadline to file a motion for relief under Rule 60(b)(1) was February 19, 2019. Defendant, however, did not file its motion until March 18, 2019, one month after the deadline. Docket 39. Therefore, the court is unable to grant defendant relief under Rule 60(b)(1). *See* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rule[] . . . 60(b).").

Defendant argues that the court should allow its untimely motion (Docket 39) to relate back to a motion Anthony attempted to file with the court before the one year deadline expired (Docket 41-3). Docket 50 at 7. On February 18, 2019, Anthony attempted to file a motion for relief from judgment under Rule 60(b). Docket 41-3. The motion only had a signature block for Anthony. Docket 41-3. The court rejected Anthony's *pro se* motion because it

was filed on behalf of defendant, an LLC, and Anthony is not a licensed attorney.

## A. *Pro se* motion on behalf of a corporation

Generally, parties are able to represent themselves *pro se*. *See* 28 U.S.C. § 1654. But the Eighth Circuit has held that § 1654 does not apply to corporations. *Carr Enters. v. United States*, 698 F.2d 952, 953 (8th Cir. 1983) (reasoning that § 1654 "has never been interpreted to allow an individual to appear for a corporation *pro se*."). This interpretation "reflects the ancient common law tradition" that a corporation can only appear in court with an attorney. *Beaudreault v. ADF, Inc*, 635 F. Supp. 2d 121, 121 (D.R.I. 2009) (citing *Osborn v. Bank of the United States*, 22 U.S. 738, 830 (1824)). The rule requiring corporations to be represented by an attorney applies to limited liability companies and corporations with one sole shareholder. *See, e.g.*, *Superior Composite Structures, LLC v. Abersham Commercial, Ltd.*, No. 10-CV-4066-KES, Docket 32 (D.S.D. Apr. 29, 2011) (refusing to allow limited liability corporation to be represented pro se); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 646 n.1 (D. Minn. 2002) ("Even sole shareholders of corporations are prohibited from representing such corporations *pro se*."); *Energy Lighting Mgmt., LLC v. Kinder*, 363 F. Supp. 2d 1331, 1332 (M.D. Fla. 2005) (refusing to allow counsel for a limited liability company to withdraw without substitution); *Int'l Ass'n of Sheet Metal Workers v. AJ Mech.*, 1999 WL 447459, at *1-2 (D. Or. June 16, 1999) (same).

The *pro se* motion filed by Anthony was rejected by the court because defendant, an LLC, cannot be represented by a non-attorney. *See Myers v. Oury*, No. 12-CV-5072-KES, 2014 WL 2458447, at *2 (D.S.D. June 2, 2014) (disregarding two entries as they pertained to two corporate defendants because the entries were signed and filed by an individual who was not a licensed lawyer); *accord United States v. Lylalele, Inc.*, 221 F.3d 1345, at * 1 (8th Cir. 2000) (unpublished table opinion) (affirming the district court's decision to strike pleadings filed *pro se* on behalf of a corporation and a trust because those entities cannot appear in federal court without legal representation). Defendant is a limited liability corporation. Therefore, it can only proceed in federal court when represented by a licensed attorney. The rejected motion was not signed by an attorney, nor does the record demonstrate that it was drafted by an attorney. Instead, the motion's signature block states "Joseph Damiano, Sr., by Anthony Joseph Damiano, the Trustee for Joseph Damiano, Sr." Docket 41-3 at 9, 10. Because the motion was filed *pro se* on behalf of an LLC, the court permissibly disregarded the motion.

Defendant relies on a bankruptcy case where the court allowed an amended petition to relate back to a petition that was originally filed by a *pro se* individual on behalf of a corporation. *In re IFC Credit Corp.*, 420 B.R. 471, 476 (Bankr. N.D. Ill. 2009), *aff'd*, 663 F.3d 315 (7th Cir. 2011). The president of the debtor, a corporation, filed a bankruptcy petition on the debtor's behalf. *Id.* at 473. The petition did not have an attorney's signature, it only had the president's. *Id.* The next day, however, an amended petition was filed on behalf

of the corporate debtor and had an attorney's signature on it. *Id.* at 474. The court allowed the amended petition to relate back to the originally filed, invalid petition because the Federal Rules of Bankruptcy Procedure allowed a general right to amend. *Id.* (citing Fed. R. Bankr. P. 1009). The court discussed in detail how the case before it was distinguishable from other bankruptcy cases that dismissed petitions filed by non-attorneys on behalf of a corporation. *Id.* at 474-75. The court noted that those cases were distinguishable because there were no amended petitions filed by attorneys. *Id.* at 475.

Defendant's reliance on this case is misplaced. Though the bankruptcy court allowed the amended petition to relate back, it was based on two facts that are not present here. First, the bankruptcy court relied heavily on the fact that there was an amended petition and that the debtor had a general right to amend it. *Id.* at 474. Second, an attorney was involved in the preparation of the original bankruptcy petition, though the attorney did not sign it. *Id.* at 475. "Because a lawyer was involved in the petition's preparation, its filing does not amount to the unauthorized practice of law." *Id.* Here, there is no amended motion or a motion for leave to amend. Additionally, nothing in the record shows that an attorney was involved in the preparation of the motion filed by Anthony on behalf of defendant. Because these two essential facts are missing, the court will not follow the holding of *In re IFC Credit Corp.*

## B. Rule 15

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its pleading, before trial, "only with the opposing party's written consent or the

court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (internal quotation omitted). An amended pleading relates back to the original pleading's filing date when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

Defendant argues that its motion to set aside the default judgment should relate back to the timely *pro se* filing. Docket 50 at 8. The court does not accept defendant's argument for three reasons. First, for the reasons stated above, the court permissibly disregarded Anthony's *pro se* motion. Defendant cannot use the invalid *pro se* motion as a way to relate its untimely motion back. The court treats the rejected *pro se* motion as a nullity; thus, there is no original motion to which relation back can apply.

Second, defendant is attempting to amend a motion. Rule 15 does not allow for parties to amend motions, only pleadings. *See* Fed. R. Civ. P. 7(a) (stating the only allowed pleadings are a complaint, an answer, a third-party complaint, or a reply to an answer). *But see, e.g.*, *United States v. Hernandez*, 436 F.3d 851, 856-57 (8th Cir. 2006) (allowing petitioner's amended § 2255 motion to relate back to his original § 2255 motion). Defendant's alleged

amended motion is distinguishable from a § 2254 or 2255 motion. Though Rule 15(c) applies to those types of motions, it is because a § 2254 or 2255 motion is analogous to a petition or a complaint, i.e. pleading. *See Hernandez*, 436 F.3d at 857 (discussing case law from the United States Supreme Court and the Eighth Circuit Court of Appeals that applies Rule 15(c) to these postconviction requests for relief).

Third, defendant did not file a motion to amend or ask the court for leave to amend its motion. The court will not construe defendant's motion to set aside default judgment (Docket 39) or its memorandum in support (Docket 40) as defendant's request for leave to amend under Rule 15(a). *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Also, the court will not consider either of those filings to be an amendment of Anthony's *pro se* motion. For these reasons, the court rejects defendant's relation back argument, and finds that its motion for relief under Rule 60(b)(1) is untimely.

## III.    Rule 60(b)(6)

In the alternative, defendant argues that it should be entitled to relief under Rule 60(b)(6). Docket 40 at 6. Rule 60(b)(6) serves as a catch-all and authorizes a court to relieve a party from a judgment based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "is not a substitute for other legal remedies." *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989). Relief under this rule is "exceedingly rare as relief requires an 'intrusion into the sanctity of a final judgment.' " *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir.

2007) (quoting *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999)). A party must demonstrate that "exceptional circumstances" support its claim. *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005). "Exceptional circumstances are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at." *Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994).

To justify intrusion into the final judgment, defendant contends that (1) questions remain whether proper service occurred to the proper parties, (2) fundamental questions of fact and law exist as to defendant's status as an entity according to Colorado law, (3) questions of North Carolina probate law need to be interpreted, and (4) a majority of plaintiff's arguments are directed at Anthony, not defendant. Docket 50 at 6-7. In making these arguments, however, defendant fails to identify any sort of exceptional circumstance that demonstrates how it failed to receive a fair opportunity to litigate its claim or failed to receive adequate redress.

Defendant's reliance on Rule 60(b)(6) for its first argument, improper service, is problematic. Defendant's reason justifying relief under Rule 60(b)(6) is the same as its claim for relief under Rule 60(b)(4). *See* Docket 40 at 10-11. But the Supreme Court has made clear that a party cannot pursue the same grounds for relief under Rule 60(b)(4) and (b)(6). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion is made within a reasonable time and is not premised on one of

16

the grounds for relief enumerated in clauses (b)(1) through (b)(5).”). Thus, defendant cannot avoid its inadequate showing of a void judgment by arguing that the same set of facts should constitute extraordinary circumstances.

This defect aside, considering the facts and circumstances here, no exceptional circumstances prevented defendant from seeking redress through the usual channels. In fact, it appears that defendant had several opportunities to redress this issue via the traditional channels. Defendant alleges that its lack of knowledge about this litigation and the default judgment constitutes exceptional circumstances. But this is contradicted by the numerous communications between plaintiff's counsel and Anthony.

Defendant alleges that it was not notified of the action initially. But the record shows someone affiliated with defendant was aware of the pending action a week after it was filed. Plaintiff's counsel states that he received a voicemail from an individual who identified himself as “AJ”[1] on July 6, 2017, three days after plaintiff's attempted personal service. Docket 43 ¶ 2. On the voicemail, Anthony stated he was calling on behalf of Heritage Cremation Provider. Docket 43-1 at 3. Though Anthony has never disclosed what his official capacity is to defendant, it is reasonable to infer that Anthony has operated defendant since Joseph's death or has used defendant's assets to operate some type of funeral business. Anthony's affidavit demonstrates that

---

[1] The court considers “AJ,” “AJ Mahoney,” “Anthony Joseph Damiano,” and “AJ Styles” to all be the same individual. Counsel for defendant admitted that AJ Styles is Anthony “AJ” Damiano. Docket 48.

he was knowledgeable about defendant's business practices. *See* Docket 42 ¶¶ 4-9. Anthony also left an 800-telephone number where he could be reached; it was the same telephone number as the telephone number on defendant's website. https://www.heritagecremationprovider.com/contact/ (visited Apr. 9, 2019); Docket 43-1 at 3. Because defendant was aware of the litigation days after it was filed, defendant had other avenues to redress the service of process issue before the court entered default judgment including: hiring an attorney, filing an answer, and arguing improper service. Defendant's failure to do these actions does not amount to exceptional circumstances.

Anthony's communications with plaintiff's counsel days after default judgment was entered also demonstrates the fact that defendant was aware of the default judgment and had opportunities to defend itself within a timely manner. Defendant alleges that though Anthony had access to the default judgment through the two emails from plaintiff's counsel to Anthony, he never reviewed it. Docket 50 at 2. Defendant alleges that Anthony only became aware of the default judgment when he was contacted by GoDaddy.com. Docket 42 ¶ 12. Both allegations are contradicted by evidence in the record that shows Anthony had several conversations with plaintiff's counsel after the default judgment was entered.

On February 20, 2018, plaintiff's counsel electronically sent the default judgment to defendant, using the email address on defendant's website (info@heritage-cremation.com). Docket 43 ¶ 3; Docket 43-2. On the same day, plaintiff's counsel received a phone call from an "AJ." Docket 43 ¶ 4. After the

phone call, plaintiff's counsel sent an email to Anthony using the info@heritage-cremation.com email address. Docket 43-3. In this email, plaintiff's counsel attached the default judgment and discussed the default judgment and the next steps in resolving the issue. *Id.*

On February 21, 2018, plaintiff's counsel had a 30-minute phone conversation with an "AJ Mahoney." Docket 43 ¶ 5. During the call, AJ made several statements about the current action: he would hire an attorney (Docket 43-3 at 3, 4, 10, 16, 36); he did not own the website during the incident, but acquired the website the first of the year (*id.* at 3); he was willing to take everything that mentions South Dakota off the website (*id.* at 4); he was not going to pay attorney's fees (*id.* at 4); the company was no longer in business (*id.* at 5, 16); and he asked questions about the enforceability of the default judgment (*id.* at 13, 16). Then, in March of 2018, Anthony sent plaintiff's counsel, using the info@heritage-cremation.com email address, numerous updates on the status of his removal of the South Dakota references. Dockets 43-5, 43-6, 43-7, 43-8; Docket 43 ¶¶ 6-9.

These communications show defendant had knowledge of the default judgment. No exceptional circumstances existed that prevented defendant from seeking redress through the usual channels. Anthony even commented that he could hire an attorney to "fight" plaintiff. Docket 43-3; Docket 43-4 at 10. Plaintiff's counsel encouraged him to hire one. Docket 43-4 at 16. Therefore, defendant had the opportunity to file a Rule 60(b)(1) motion within the one-year

deadline. Defendant's failure to do so does not entitle defendant to relief under Rule 60(b)(6).

Furthermore, defendant's allegation that it was not properly served is attributable to defendant's own doing. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."). Defendant's only registered agent died, and defendant failed to list another registered agent who could receive service of process. Docket 9-1; Docket 36 at 2. Also, as discussed above, the sole location defendant set up to receive service of process was a virtual office that could only receive mail and could not accept service of process. Docket 9-2; Docket 9-1.

Defendant's second and third arguments are an attempt to argue new legal theories—affirmative defenses. Rule 60(b) motions cannot be used "to 'tender new legal theories' " or to reargue "on the merits." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)) (first quoted material); *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (second quoted material). First, defendant argues that "fundamental questions of fact and law also exist as to the status of defendant pursuant to Colorado law." Docket 50 at 6. Defendant urges the court to set aside the default judgment under Rule 60(b)(6) because a determination needs to be made whether defendant, an LLC with no members, may even be sued. *Id.* Defendant's second

argument is that questions of North Carolina probate law need to be interpreted. Docket 50 at 6. Defendant alleges that plaintiff's claim could be time-barred. *Id.*

Both of these arguments could and should have been brought before the court entered default judgment. Defendant failed to utilize the means available to protect its interest. *See In re Zimmerman*, 869 F.2d at 1128. These affirmative defenses should be brought in an answer. Defendant failed to file an answer and raise these affirmative defenses, to respond to the default judgment, or to file a timely Rule 60(b)(1) motion. Defendant's explanation for its failure to use these usual channels to redress these issues was rejected by this court. Defendant's failure to provide an answer or defend itself against the claims does not amount to exceptional circumstances, and therefore, does not entitle it to relief under Rule 60(b)(6).

Defendant's fourth argument is that Anthony is not a member of defendant, not a party of this action, and was not properly served, so the default judgment cannot be enforced against him. Docket 50 at 6. Defendant did not provide any case law to demonstrate how this argument entitles it to relief under Rule 60(b)(6). The court cannot see how these facts amount to exceptional circumstances. Similar to defendant's previous arguments, this could and should have been raised as a possible affirmative defense in earlier proceedings. A motion for post final judgment relief is not the proper place to argue new legal theories. *See Arnold*, 627 F.3d at 721; *Broadway*, 193 F.3d at 990.

Also, plaintiff is not attempting to enforce the default judgment against Anthony. Plaintiff is attempting to enforce the default judgment against defendant, which includes its assets, i.e. the websites. And if those assets were distributed after the LLC dissolved, then against the owner of the dissolved LLC. Colo. Rev. Stat. Ann. § 7-90-913 (stating a claim can be enforced against a dissolved LLC under sections 7-90-911 or 7-90-912 against the dissolved LLC to the extent of its undistributed assets and against the owner of the dissolved LLC if the assets have been distributed in liquidation). Anthony appears to be defendant's owner according to Colorado law and Joseph's will. Docket 49-1 (Joseph's will contains a residuary clause bequeathing the remaining estate to Anthony); Colo. Rev. Stat. Ann. § 7-80-704 ("If a member who is an individual dies . . . the member's executor, administrator, . . . or other legal representative may exercise all of the powers of an assignee or transferee of the member.").

The court finds that exceptional circumstances did not deprive defendant of a full and fair opportunity to litigate its claim. The court denies defendant's motion for relief under Rule 60(b)(6).

## CONCLUSION

The court will not set aside the default judgment for three reasons. First, defendant is not entitled to relief under Rule 60(b)(4) because the judgment is valid. Second, defendant's motion for relief under Rule 60(b)(1) is untimely. Third, defendant is not entitled to relief under Rule 60(b)(6) because defendant has not demonstrated that exceptional circumstances support its claims. It is

ORDERED that defendant's motion to set aside the default judgment (Docket 39) is DENIED.

Dated April 22, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE