UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HERITAGE HOME FOR FUNERALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HERITAGE CREMATION PROVIDER, LLC, <br><br> Defendant. | 4:17-CV-04086-KES <br><br><br> ORDER GRANTING MOTION FOR CONTEMPT AND TO ENFORCE THE DEFAULT JUDGMENT |

Plaintiff, Heritage Home for Funerals, Inc., moves for an order of contempt and to enforce the default judgment. Docket 20. Defendant, Heritage Cremation Provider, LLC, opposes the motion. Docket 36. For the reasons stated below, the court grants plaintiff's motion and modifies the default judgment.

**BACKGROUND**

Plaintiff, Heritage Home for Funerals, Inc., filed its complaint on June 30, 2017, against defendant, Heritage Cremation Provider, LLC. Docket 1. The complaint alleged trademark infringement, trademark dilution, false designation of origin, and unfair competition. *Id.* Because defendant never filed an answer or litigated the matter, plaintiff filed a motion for entry of default on September 7, 2017. Docket 12. On September 11, 2017, the clerk entered default against defendant. Docket 14. On September 15, 2017, plaintiff moved

for default judgment against defendant. Docket 15. Defendant failed to respond. On February 20, 2018, the court entered a default judgment against defendant. Docket 17. On October 25, 2018, plaintiff moved for an order of contempt and to enforce the default judgment. Docket 20.

On December 28, 2018, the court ordered defendant file a response to the order to show cause or be held in contempt. Docket 24. The court also scheduled a hearing on the matter. *Id.* At the hearing on March 3, 2019, Anthony Damiano appeared pro se on behalf of defendant; plaintiff was represented by counsel. Docket 29. The court instructed Anthony that he could not appear pro se on behalf of defendant because defendant is a limited liability corporation. *Id.* Anthony requested the hearing be continued. *Id.* The court ordered Anthony to hire an attorney and to have the attorney file a notice of appearance within one week. *Id.* On March 6, 2019, an attorney noted his appearance on the record on behalf of defendant. Docket 30. Defense counsel moved to continue several deadlines (Dockets 31, 33), and the court set the show cause hearing for April 11, 2019. Docket 35.

On March 18, 2019, defendant filed a motion to set aside the default judgment. Docket 39. Plaintiff opposed the motion. Docket 46. At the hearing on April 11, 2019, the court heard arguments from the parties about defendant's motion to set aside the default judgment. Docket 48. After taking it under consideration, the court denied defendant's motion. Docket 51. Plaintiff's motion for contempt and to enforce the default judgment is the sole pending motion before this court.

# DISCUSSION

## I. Plaintiff's Motion for an Order of Contempt

### A. Legal Standard

It is a generally established principle that courts have an inherent power to punish parties for contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citation omitted). The party that seeks the order of civil contempt "bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Id.* at 505 (citation omitted). If the party can do so, the burden shifts to the alleged violator to show its inability to comply with the court's directive. *Id.* (citation omitted).

### B. Plaintiff's Burden

In the default judgment, the court ordered defendant to comply with three directives. Docket 17. First, the court ordered defendant to stop using and "immediately remove the name or mark 'Heritage' and any other mark, word, or name similar to 'Heritage' from its marketing, selling, and provision of funeral, removal, embalming, memorial, burial, cremation, and related services in South Dakota." *Id.* at 2. Second, defendant was also ordered to stop "[u]sing any false designation or origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public . . . to

believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by defendant is in any manner associated or connected with Heritage. . . [.]" *Id.* Third, the court ordered defendant to cease all use of http://www.hertiagecremationprovider.com and "any similar domain names owned and/or controlled by defendant that contain the word 'Heritage.' " *Id.*

Plaintiff alleges that defendant's actions or inactions violated the court's order in several ways. Docket 21 at 4-6. First, plaintiff contends that defendant has continued to use the protected "Heritage" mark in its marketing. *Id.* at 4. Second, plaintiff contends that defendant continues to offer its services in a manner that leads customers to believe that defendant is affiliated with plaintiff. *Id.* at 4-5. Third, plaintiff contends that defendant continues to use the infringing domain names. *Id.* at 6.

In its original business plan, defendant served as a conduit for funeral services. Docket 36 at 8. Customers would contact defendant through its website, and defendant would put the customers in contact with local funeral service providers. *Id.* Defendant argues that it did not and does not offer any funeral, cremation, or related services in South Dakota. *Id.*; Docket 42 ¶¶ 5-8. Furthermore, Anthony alleges that defendant has ceased offering conduit services in South Dakota and that defendant's website does not contain any reference to South Dakota. Docket 36 at 8; Docket 42 ¶ 8. In regard to the use of the "Heritage" mark, defendant alleges that it is not violating the court's

order because it "is now synonymous with the countless other funeral servicers around the United States that use the 'Heritage' mark." Docket 36 at 8.

As noted by plaintiff, "the point is not whether [d]efendant *actually* provides those services, but whether [d]efendant purports to do so while using the 'Heritage' mark which causes customer confusion and otherwise harms Heritage's business." Docket 45 at 9 (emphasis in original). Defendant's arguments and Anthony's statements in his affidavit are contradicted by the affidavits submitted by plaintiff and by defendant's own websites. The evidence presented demonstrates that defendant's action violated the court's default judgment.

First, defendant continues to use the protected "Heritage" mark in its marketing. Second, defendant continues to offer its services in a manner that leads customers to believe that defendant is affiliated with plaintiff. Defendant argues that it only offered conduit services in South Dakota via its website and that it no longer offers conduit services in South Dakota. Docket 36 at 8. Defendant removed a reference to South Dakota from its websites' sitemaps. *Id.* at 7. But as plaintiff correctly argues, this falls short of what defendant was ordered to do. Docket 45 at 8. Defendant's websites, which contain the protected "Heritage" mark, state defendant offers several of the services that Anthony stated defendant no longer offers (Docket 42 ¶¶ 5-7).[1] The websites discuss the funeral services defendant provides, for example, the "funeral home

---

[1] *See* Heritage Cremation Provider, https://www.heritagecremationprovider.com/about/ (last visited May 7, 2019).

is owned and operated by licensed funeral directors," the "services our professionals provide are handled in-house," and "we create and customize folders [and] thank you cards . . . here at the funeral home." And the websites list defendant's cremation service's cost and the items/services included, like transporting of the deceased to the crematory, conducting gatherings, ceremonies, or memorial services after the cremation, obtaining copies of death certificates, filing for benefits, and providing containers for the return of the cremated remains.[2]

Additionally, defendant's removal of the South Dakota references on the sitemaps has not ended customer confusion or prevented customers in South Dakota from accessing defendant's websites. Plaintiff informed the court that the removal of the South Dakota references on the sitemaps "did nothing to remove the individual webpages set up to funnel individuals to defendant." Docket 45 at 8. As of March 25, 2019, plaintiff's search for key terms like "Sioux Falls" and "Heritage" on Google included defendant's website in the search results. *Id.*

The affidavits prove that defendant's use of its website and the "Heritage" mark has continued to cause confusion to the consuming public in South Dakota. Matt Pepper, the funeral director at Heritage, executed two affidavits. Dockets 22, 44. In his October affidavit, Pepper stated that customer confusion

---

[2] *See* Heritage Cremation Provider, https://www.heritagecremationprovider.com/services/ (last visited May 7, 2019); Heritage Cremation Provider, https://www.heritagecremationprovider.com/brochure/cremation-options.html (last visited May 7, 2019).

continued after the court entered the default judgment. Docket 22 ¶ 7. Pepper explained that on several occasions he had spoken with customers who experienced confusion between defendant and plaintiff. *Id.* ¶ 3. Customers were confused about the pricing of the services offered by plaintiff and the prices quoted by defendant on phone calls and its website. *Id.* ¶ 4. Pepper also spoke to customers who were informed by defendant's representatives that customers could visit and view the remains of a loved one at Heritage's facility in Sioux Falls, South Dakota, though no arrangements had been made. *Id.* ¶ 5. Pepper and other of plaintiff's employees had to inform these confused customers that defendant was not affiliated with plaintiff, not licensed by South Dakota to perform these services, and not registered to do business in South Dakota. *Id.* ¶ 6. "The customers then often become distraught, some of whom have already paid the [d]efendant for . . . services that are never provided." *Id.*

In Pepper's second affidavit from March of 2019, Pepper stated that on February 20, 2019, he visited with a customer who expressed confusion between defendant and plaintiff. Docket 44 ¶ 4. The customer believed she planned for cremation of a loved one with plaintiff, but she had not. *Id.* The customer received pricing information from a representative of defendant, and she believed defendant and plaintiff were affiliated. *Id.*

Josh Fiedler, the president of non-party Dakota Embalming & Transport Service, Inc., executed an affidavit in February of 2019. Docket 27. Fiedler stated that on several occasions, Dakota Embalming had received phone calls

7

from an "AJ"[3] who represented himself to be defendant's principal. *Id.* ¶ 3. AJ would attempt to solicit Dakota Embalming's assistance to transport, embalm, and provide other funeral-related services to customers defendant had contacted in Sioux Falls, South Dakota. *Id.* On October 29, 2018, Fiedler received a phone call from AJ. *Id.* ¶ 4. On this call, AJ asked for Dakota Embalming's assistance with a person who passed away in Sioux Falls. *Id.* Fiedler declined the solicitation. *Id.* He also reminded AJ that defendant was involved in litigation with plaintiff; AJ became "enraged" and declared that "no one would stop him or [d]efendant from doing business in South Dakota." *Id.*

Third, defendant continues to use the infringing domain names. The default judgment required defendant to shut down the website and all other domains owned by defendant that contained "Heritage." At the time the default judgment was entered, plaintiff was aware of one live website owned and operated by defendant that used "Heritage."[4] Since the default judgment was entered, plaintiff found a second website that contains "Heritage" in its title.[5] Docket 21 at 6. Plaintiff alleges that this new website is a mirror image of defendant's original, infringing website. *Id.* at 6-7. Both websites are owned by Anthony Damiano. Docket 23-4 at 2-5. Both websites contain references that they are owned and operated by defendant. Docket 21 at 7. At the bottom of

---

[3] The court considers "AJ," "AJ Mahoney," "Anthony Joseph Damiano," and "AJ Styles" to all be the same individual. Counsel for defendant admitted that AJ Styles is Anthony "AJ" Damiano. Docket 48.
[4] The default judgment specifically required defendant cease using the specific domain of https://www.heritagecremationprovider.com. Docket 17.
[5] The second domain is http://www.heritage-cremation.com/.

both websites, they say "Copyright © 2017 Heritage Cremation Provider, LLC." *Id.* Both websites' contact pages list defendant as a point of contact. Both websites are still live and continue to use the protected "Heritage" mark. *Id.* at 6-7.

Plaintiff has met its burden by demonstrating that defendant continues to offer its services in South Dakota using the "Heritage" mark and its domain names, and this use continues to result in customer confusion. This is a clear violation of the default judgment.

In addition, plaintiff alleges defendant violated the default judgment by failing to show its compliance with the court's order. *Id.* at 6. The default judgment required defendant file with the court and serve upon plaintiff's counsel, within thirty days after service of the order, a report in writing and under oath setting forth defendant's compliance with the injunction. Docket 17 at 2. Defendant did not file such a document within thirty days of the default judgment. And, as of today, defendant has still not filed this document. Plaintiff has met its burden to prove defendant violated the order by failing to show its compliance.

**C. Burden Shift to Defendant**

Because plaintiff met its burden to establish that defendant failed to comply with the default judgment, the burden shifts to defendant to show its inability to comply. Defendant argues that it should not be held in contempt because the default judgment is void and it did not receive notice of plaintiff's lawsuit and the default judgment. Docket 36 at 6, 8, 11. Additionally,

9

defendant alleges that Anthony did not comply with the default judgment because he was never served and is not a named party to the action. *Id.* at 6.

As discussed in detail in the court's order denying defendant's motion to set aside the default judgment, the court found the default judgment was valid. Docket 51 at 3-10. The court found defendant, specifically Anthony, had notice of the default judgment. *Id.* at 17-19. Defendant argues that Anthony only became aware of the default judgment after being contacted by GoDaddy.com. Docket 36 at 6. But this argument is contradicted by the numerous communications between Anthony and plaintiff's counsel. The day the default judgment was entered plaintiff's counsel sent an email containing a copy of the default judgment to the email address owned by defendant. Docket 43-2. Then, on that same day, Anthony communicated with plaintiff's counsel via email and phone calls about the default judgment. Docket 43 ¶¶ 3, 4; Docket 43-3. Over the next month plaintiff's counsel and Anthony had a dozen conversations over the phone and through emails that contained references and detailed discussions about the default judgment and its implications. Docket 43-4 (transcript of February 21, 2018 phone call); Docket 43-5 (email from Anthony on March 1, 2018); Docket 43-6 (email from Anthony on March 5, 2018); Docket 43-7 (email from defendant's email address on March 14, 2018); Docket 43-8 (email from Anthony on March 19, 2018). Furthermore, all these communications occurred before plaintiff contacted GoDaddy.com. *See* Docket 23-1 (letter sent by plaintiff's counsel to GoDaddy.com on March 14, 2018).

The court finds that defendant received immediate notice of the default judgment, and cannot use this argument to justify its non-compliance.

Defendant takes issue with plaintiff's attempts to remove the websites from the internet. Docket 36 at 6-7. "[T]he Default Judgment entered by the [c]ourt did not grant [p]laintiff the authority to unilaterally cancel or absorb [d]efendant's domain names." *Id.* But plaintiff's attempts to enforce the default judgment by contacting the third-party businesses in its efforts to shut down the domains (Dockets 23-1, 23-2, 23-3, 23-5, 23-6, 23-7, 23-9) do not violate the court's order. Instead, the court is focused on defendant's actions or inactions, not plaintiff's actions, when deciding whether defendant is in contempt of the court's order.

The court also does not view plaintiff's proffer of evidence detailing its attempts to remove the domains as a way to meet its burden. Plaintiff has already met the burden based solely on defendant's inaction. Plaintiff only proceeded down this avenue because defendant refused to comply with the default judgment. Docket 45 at 5. When plaintiff was successful in shutting down one of the domains (Docket 23-8), it appears defendant interfered with plaintiff's attempts to enforce the default judgment by contacting the third-party and insisting the domain be restored. Docket 41-4 (email from Anthony instructing GoDaddy.com to keep the domain live). In the email from Anthony to GoDaddy.com representatives, Anthony said, "This site needs to remain up until Go Daddy has a court order instructing you to take the site down[.]" *Id.* at 1. Although the court's default judgment did not order GoDaddy.com to take

11

down the domains, the court did order defendant to take down the domains. This situation demonstrates that defendant had the ability to comply with the default judgment, but chose not to comply.

Thus, the court grants plaintiff's motion for an order of contempt. Defendant violated and continues to violate the default judgment by using its infringing domain names and the "Heritage" mark. Defendant also violated the court's default judgment because it did not certify to the court and plaintiff's counsel that it complied with the default judgment.

## II. Plaintiff's Motion for an Order to Enforce the Default Judgment

Plaintiff contends additional remedial relief is necessary because defendant has prevented the fulfillment of the court's original injunction. Docket 21 at 10. To achieve the court's intended results of it default judgment, plaintiff suggests the court make several clarifications/modifications to the injunction. *Id.* at 3, 11-12.

"[A] federal court of equity has inherent jurisdiction in the exercise of its equitable discretion and subject to appropriate appellate review to vacate or modify its injunctions." *Booker v. Special Sch. Dist. No. 1*, 585 F.2d 347, 352 (8th Cir. 1978) (citing *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976)). A district court can modify a judgment "so as to achieve the required result with all appropriate expedition." *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968). "If the decree has not . . . achieved its 'principal objects,' . . . the time has come to prescribe other, and if necessary more definitive, means to achieve the result." *Id.* at 251-52; *see Exxon Corp. v.*

12

*Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 503 (5th Cir. 1980) ("The holding in *United Shoe Machinery* indicates that an injunction may be modified to impose more stringent requirements on the defendant when 'the original purposes of the injunction are not being fulfilled in any material respect.' " (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2961 (3d. ed. 1973))).

Also, under Federal Rule of Civil Procedure 60(b)(5), a court can provide a party with relief from a final judgment if "applying it prospectively is no longer equitable." *See Booker*, 585 F.2d at 352. In order to obtain relief from an injunction, the burden is on the party seeking relief to "identify changed circumstances that shift the equitable balance in their favor under Rule 60(b)(5)." *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 715 (8th Cir. 2011).

The court's injunction sought to stop defendant from continuing to infringe on the protected "Heritage" mark, prevent defendant from continuing to confuse and mislead the public that it was affiliated with plaintiff, and to stop defendant from engaging in unfair competition with plaintiff. *See* Docket 17. The current injunction has not achieved its "principal objects." As discussed in detail in the contempt analysis, defendant has continued to infringe on the protected "Heritage" mark with the use of its website. Defendant's continued use of the mark and its websites has misled the public to believe the defendant is affiliated with plaintiff as demonstrated in plaintiff's affidavits. Dockets 22, 27, 44. Defendant attempts to skirt around the court's

13

default judgment by arguing that defendant is no longer in business, that the websites are owned and operated by Anthony, and that Anthony is not involved with defendant. Docket 36 at 2, 6; Docket 42 ¶ 4. Thus, the time has come for the court to prescribe other and more definitive means to achieve the intended result of protecting plaintiff's business in South Dakota and preventing defendant from confusing the public. More definitive means include a clarification that the injunction extends to all persons acting in concert and privity with defendant and defendant's agents, i.e. Anthony.

      Additionally, since the court's February 2018 order, plaintiff has identified an individual named Anthony who operates and owns defendant's websites. As discussed above, Anthony has continued to use the domain names and the protected "Heritage" mark to solicit business in South Dakota even after the default judgment, after plaintiff's counsel's communications to stop, and after plaintiff's attempts to shut down the domains. Anthony alleges that his deceased father, Joseph Damiano, was the sole owner and operator of defendant (Docket 42 ¶ 4), yet Anthony still operates the telephone number listed on both websites and the email address. When GoDaddy.com took down the infringing domains, Anthony instructed GoDaddy.com to put them back up. Docket 41-4. Thus, the court's previous injunction fails to adequately address the changed circumstances of Anthony's involvement with defendant and his continued use of the very things this court ordered defendant to stop using.

The court will also add an order directing third-parties to take down defendant's infringing websites. Even after plaintiff's counsel showed third-parties the court's order requiring defendant to take down the domains, the third-parties refused to act because the order was "not specific enough." *See* Docket 23-2 (refusing to take down the website because the judgment was specific to Heritage Cremation Provider, and Heritage Cremation Provider was not the registrant); Docket 23-6 (stating it would only act if the registrant was listed as defendant); Docket 23-9 (recommending plaintiff provide a court order naming the registrant and the domain names in order for GoDaddy.com to take action). To adequately address this issue, the court will add a provision instructing third-parties to take down any of defendant's affiliated websites that violate the default judgment.

Plaintiff has met its burden in establishing that the circumstances have changed and that applying the injunction prospectively is no longer equitable. The court's previous injunction no longer offers the necessary protection of plaintiff's business and claims. The court grants plaintiff's request and modifies its injunction under Federal Rule of Civil Procedure 60(b)(5).

## CONCLUSION

The court holds defendant in contempt because defendant violated the court's default judgment by its continued use of the domain names, its use of the protected "Heritage" mark, and its failure to file a written report of its compliance with the injunction. The court must modify its previous injunction because circumstances have changed. It is

15

ORDERED that plaintiff's motion for contempt and to enforce the default judgment (Docket 20) is GRANTED.

IT IS FURTHER ORDERED that defendant is held in civil contempt.

IT IS FURTHER ORDERED that the court's default judgment (Docket 17) will be amended consistent with this order.

Dated May 9, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE